## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RICHARD EDELMAN,

       *Plaintiff*,

    v.

SECURITIES AND EXCHANGE
COMMISSION,

       *Defendant*.

Civil Action No. 14-1140 (RDM)

### MEMORANDUM OPINION

    In 2014, Plaintiff Richard Edelman filed six requests under the Freedom of Information

Act ("FOIA"), 5 U.S.C. § 552, with Defendant, the Securities and Exchange Commission

("SEC"), seeking documents related to the formation of a real estate investment trust.  After the

SEC failed to produce any responsive documents, Edelman filed this FOIA action, Dkt. 1, and, in

turn, the SEC released over 2,000 pages of responsive records.  The SEC then moved for

summary judgment, arguing that it had "conducted a reasonable search for documents responsive

to [Edelman's] FOIA requests" and had "withh[eld] only information that was . . . protected by

FOIA exemptions."  Dkt. 15 at 2.  Edelman cross-moved for summary judgment, asserting that

the SEC's search for records was inadequate and that the SEC improperly withheld certain

records.  *See* Dkt. 16.

    On March 24, 2016, the Court issued a decision, granting in part and denying in part both

parties' motions.  *Edelman v. SEC*, 172 F. Supp. 3d 133 (D.D.C. 2016) ("*Edelman I*").  The

Court identified two outstanding issues, *see* Dkt. 25 at 1–2, and ordered the SEC (1) to "conduct

an additional search" as to Edelman's "[C]onsumer [C]omplaints" FOIA request, *Edelman I*, 172

F. Supp. 3d at 156, and (2) to "search the 113 pages" of attorney notes identified as potentially responsive to that same FOIA request; to "produce [any] pages" not subject to an exemption; and to file "a supplemental *Vaughn* index," *id.* at 154.   The next month, the SEC filed a renewed motion for summary judgment, Dkt. 26, and a supplemental *Vaughn* index, Dkt. 26-2, asserting that, in compliance with the Court's orders, it had produced more than a thousand additional pages of "unredacted or partially redacted" responsive documents to Edelman.   Dkt. 26 at 2. Edelman, in turn, renewed his cross-motion for summary judgment, Dkt. 28, asserting that the SEC did "not conduct an adequate search for additional documents pertaining" to his FOIA request for "consumer complaints," and did not "adequately justif[y] the withholding of certain information pursuant to FOIA Exemptions 5 and 6."   Dkt. 28-1 at 2.   As explained below, the Court will grant in part and deny in part the SEC's renewed motion, and will deny Edelman's renewed motion.

## I.  BACKGROUND

As discussed at greater length in the Court's prior opinion, *see Edelman I*, 172 F. Supp. 3d at 138–41, "Edelman is a former investor in the Empire State Building," and he "operate[s] a website that provides information to investors and the public regarding the contentious process of converting the ownership of the Empire State Building into a real estate investment trust."   *Id.* at 138.   On his website, Edelman "has posted documents filed with and issued by the SEC, which was required to approve the creation of the trust, known as the Empire State Realty Trust, Inc., or ESRT for short."   *Id.*   "This action arises out of six FOIA requests that Edelman submitted to the SEC in order to obtain documents about its review of the proposed transaction."   *Id.*

As relevant to the motions currently before the Court, Edelman submitted a "FOIA request to the SEC on January 15, 2014," seeking "[c]onsumer complaints."   *Id.* at 140; *see also*

Dkt. 26-1 at 1–2 (Second Livornese Decl. ¶ 3).[1]  In that request, Edelman "described a set of complaints submitted by Empire State Building investors to the SEC during its review of the proposed transaction," and he "alleged that [three] SEC lawyers . . . interviewed the investors who had submitted the complaints." *Edelman I*, 172 F. Supp. 3d at 140.  In particular, the request sought "'all notes, reports, emails or any other accounts from th[o]se interviews' and 'all emails to and from the . . . SEC lawyers where those complaints and interviews [we]re discussed.'"  *Id.* (first alteration in original) (quoting Dkt. 15-3 at 5 (Ex. 2)); *see also* Dkt. 26-1 at 2 (Second Livornese Decl. ¶ 3(a)–(b)).  After pursuing the SEC's internal FOIA appeals process without success, Edelman filed this action, and on September 30, 2014, the SEC "produced 2,034 pages of records responsive to" this request and another of Edelman's requests, "but withheld some material on the basis of FOIA Exemptions 5 and 6." *Edelman I*, 172 F. Supp. 3d at 140.  The SEC also withheld "notes from SEC meetings" and from "calls between the SEC and investors" created by the three SEC lawyers, asserting that, because the notes were for the attorneys' "personal use and convenience," they "were not subject to FOIA." *Id.* at 138–39; *see also id.* at 147.  Having made this production, the SEC then moved for summary judgment.  Dkt. 15.

    In his initial opposition and cross-motion for summary judgment, Edelman challenged the adequacy of the SEC's production of records responsive to his Consumer Complaints request. Dkt. 16.  He argued that "the SEC construed his request too narrowly by searching only for documents *about* consumer complaints, rather than for the complaints themselves" and that "the

---

[1]  The Court's earlier decision interchangeably refers to this request as "Request No. 14-03452" (the "processing number" assigned by the SEC to Edelman's request), the "Consumer Complaints" request, and the "fourth FOIA request." *See, e.g.*, *Edelman I*, 172 F. Supp. 3d at 140, 145, 147.  For the purposes of this memorandum, the Court will refer to this FOIA request as Edelman's "Consumer Complaints" request.

Case 1:14-cv-01140-RDM   Document 34   Filed 03/06/17   Page 4 of 18


SEC erred in concluding that notes taken by SEC attorneys were not records subject to FOIA."

*Edelman I*, 172 F. Supp. 3d at 147. The Court agreed with Edelman on both counts. First, it

concluded that the SEC unduly restricted the scope of Edelman's FOIA request, and it thus

"direct[ed] [the SEC to] conduct an additional search in response to [Edelman's Consumer

Complaints] request, on the understanding that . . . the request encompasse[d] not just documents

*about* the complaints but the complaints *themselves*." *Id.* at 156. Second, the Court held that the

attorney notes were "not categorically exempt from FOIA," and it ordered "the SEC to search the

11[2] pages"[2] of previously identified attorney notes; to "file a supplemental *Vaughn* index

responsive to the considerations set out in" the Court's opinion; and to produce any responsive

pages to Edelman, subject to any appropriate FOIA exemptions. *Id.* at 154–55.

In response to the Court's order, the SEC now represents that it has "searched its record

systems for the complaints that were the subject of Edelman's [Consumer Complaints] FOIA

request," Dkt. 26 at 12, and has "produced to Edelman 1,446 pages of consumer complaint

documents that were unredacted or partially redacted, and [one] page that was redacted in full,"

*id.* at 2. In addition, the SEC asserts that it "gathered and reviewed the 112 pages of attorney

notes" and "produced [seventy-one] pages of attorney notes to Edelman, which were unredacted

or partially redacted, and withheld [forty-one] pages of attorney notes in their entirety." *Id.*

Finally, the SEC explains that it has complied with the Court's prior direction that it "produce[]

an unredacted version of [one document] to the Court for an *in camera* review" and has,

additionally, provided Edelman with a "partially-redacted version" of that same document,

withholding only the "names of two [SEC] staff members under FOIA Exemption 6." *Id.* As a

---

[2]  As the SEC points out in its renewed motion for summary judgment, its "previous filings with the Court . . . mistakenly stated that there were 113 pages of attorney notes" when, actually, "there were only 112 such pages of attorney notes." Dkt. 26 at 2 n.1.

result, the SEC asserts that it has complied in full with the Court's prior ruling, and now renews

its motion for summary judgment.  Dkt. 26.  Edelman disagrees and renews his cross-motion for

summary judgment, arguing that the SEC's search was inadequate and that its redactions are not

appropriate under Exemptions 5 and 6.  Dkt. 28-1.

## II.  ANALYSIS

In its renewed motion for summary judgment, the SEC asserts that its most recent search

for and production of responsive documents has now remedied the deficiencies identified in the

Court's first summary judgment decision and order.  *See* Dkt. 26.  In his opposition and renewed

cross-motion, however, Edelman challenges three aspects of the SEC's search and production:

First, he alleges that the SEC's search for consumer complaints was inadequate, as evidenced by

the fact that it failed to uncover several responsive documents, Dkt. 28-1 at 2–4; second, he

argues that the SEC has not properly invoked the deliberative process privilege pursuant to

Exemption 5, *id.* at 4–5; and, third, he claims that the SEC has failed to establish that it properly

"with[e]ld[] the identities of those making complaints to it about the proposed [ESRT]

transaction" pursuant to Exemption 6, *id.* at 5–7.  The Court will address each contention in

turn.[3]

## A.    Adequacy of the SEC's Search for Consumer Complaints

In the order accompanying its prior decision, the Court instructed the SEC to "conduct

---

[3]  In its prior decision, the Court "order[ed] the SEC to produce an unredacted version" of
"Document 1"—an "internal memo to file drafted by SEC attorneys regarding the [transaction]
review process"—for "*in camera* review."  *Edelman I*, 172 F. Supp. 3d at 158–59.  The SEC's
renewed motion for summary judgment asserts that it complied with this instruction and that, on
further review, it has now decided to provide Edelman with a version of that document that
discloses "the information [the Commission had] previously withheld under Exemption 5."  Dkt.
26 at 2.  This version of Document 1 withholds only the "names of two [SEC] staff members
under FOIA Exemption 6."  *Id.*  Edelman has not objected to that limited withholding, *see
generally* Dkt. 28-1, and, in any event, the withholding appears justified under Exemption 6.

[an] additional . . . search for any records . . . responsive to Edelman's [Consumer Complaints] request" and to "release any records that it determine[d] [we]re responsive" to that request. Dkt. 25 at 1–2. This task fell to the SEC's Office of Freedom of Information Act Services, which is supervised by John Livornese. Dkt. 26-1 at 1 (Second Livornese Decl. ¶ 1). According to Livornese, he "determined that any [responsive] 'consumer complaints' would be located in the databases maintained by staff in the SEC's Division of Corporation Finance ('CF')," and he was informed by CF staff that "any and all records of communications the CF staff received from any outside source that commented upon, 'complained' about, or criticized any aspect of . . . the proposed ESRT transaction were uploaded, by CF staff, to the Sharepoint database." *Id.* at 2 (Second Livornese Decl. ¶ 4). Livornese further attests that the "Sharepoint database allows a staff member to create a site on the server, store sensitive information at that site[,] and grant access to that information [to] other staff or staff teams within the SEC." *Id.* A search of the Sharepoint database, according to Livornese, located "1,447 pages of documents . . . that reflected [the] external consumer complaints" requested by Edelman, of which 1,446 pages were produced in unredacted or partially redacted form. *Id.* at 2–5 (Second Livornese Decl. ¶¶ 4–8).

Edelman contends that this search must have been "inadequate" because it failed to uncover consumer complaints from eight individuals, who have submitted declarations stating that they have "reviewed the consumer complaints sent to . . . Edelman" and "d[id] not see [their] complaint[s]" in the SEC's production. *See, e.g.*, Dkt. 28-2 at 2 (Gaskill Aff., Ex. A); Dkt. 28-1 at 2–3. In addition, Edelman argues that, by searching only the Sharepoint database, the SEC failed to search for responsive documents in the "paper files" or email records of the SEC staff members "who worked on the transaction." Dkt. 28-1 at 3. Both arguments are unavailing.

As to the first, the mere fact that Edelman has located complainants who assert that they made complaints that do not appear in the SEC's production does not, on its own, cast doubt on the efficacy of the SEC's search.  It "is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  "After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Id.*  But, more importantly, it is far from clear that the SEC's production omits responsive records.  In response to the eight declarations submitted in support of Edelman's opposition and cross-motion, the SEC asked a paralegal in its Office of General Counsel to review unredacted copies of all of the consumer complaints that the SEC released to Edelman in response to his FOIA request.  Dkt. 30-1 at 1 (Barss Decl. ¶ 3).  According to the SEC's paralegal, she "found [written] complaints about the ESRT transaction by many of the individuals who provided" the declarations.  *Id.*  Of equal significance, moreover, the SEC notes that most of the eight declarations do not indicate whether the declarants submitted written complaints or, instead, lodged oral objections with SEC staff, Dkt. 30 at 3, and Edelman appears to concede in his reply brief that some of the complaints were made orally, Dkt. 32 at 2.  That distinction would appear to explain any discrepancy between the SEC's recent production of the *written* complaints—which is what the Court ordered—and the declarants' recollections.  And, indeed, the SEC paralegal reports that she "found references to *communications* from and about *all* of the" declarants.  Dkt. 30-1 at 1 (Barss Decl. ¶ 3) (emphasis added).  To the extent that some of the declarants made oral complaints, any records pertaining to those complaints—the notes taken during telephone interviews and emails describing interviews between SEC staff members and oral complainants—were (subject to other exemptions) already produced after a

search that this Court has previously determined was "reasonable and adequate." *Edelman I*, 172 F. Supp. 3d at 156–57.

Edelman's second argument—that the SEC failed to search the paper files and emails of CF staff members and attorneys—also fails. Livornese asserts in his declaration that he "was informed by CF staff that *any and all* records of communication the CF staff received from any outside sources that commented upon, 'complained' about, or criticized any aspect of, the disclosure or activities by solicitation participants related to the proposed ESRT transaction were uploaded, by CF staff, to the Sharepoint database." Dkt. 26-1 at 2 (Second Livornese Decl. ¶ 4) (emphasis added). As a result, it was entirely reasonable for the SEC to focus its search on that database. The SEC, moreover, went beyond the Sharepoint database and searched the emails of the three CF attorneys who were responsible for reviewing the ESRT filings, but found no written complaints from any of the eight declarants that had not previously been produced to Edelman. Dkt. 30-1 at 1–2 (Barss Decl. ¶ 4). Although it is *possible* that responsive documents might have been found in the filing cabinets and email accounts of other CF personnel, the SEC is not required to "search every record system" in response to a FOIA request; it is only obligated to "us[e] methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Here, the SEC used exactly the search methods that would be reasonably expected to produce the documents Edelman requested.

The Court, accordingly, concludes that the SEC conducted an adequate search for the consumer "complaints themselves," as the Court directed in *Edelman I*. *See* 172 F. Supp. 3d at 156 (emphasis removed).

B.      **Exemption 5 Withholdings**

Next, Edelman contends that the SEC improperly redacted "deliberative" material from portions of the attorney notes and consumer complaints it produced to him.  He makes two arguments.  First, Edelman contends that the Court should reject the SEC's reliance on the deliberative-process privilege because the Commission "failed to identify the actual deliberative process . . . it [wa]s attempting to protect."  Dkt 28-1 at 4.  Second, he argues that the SEC improperly withheld "factual material" and "comments made by SEC staffers" that were embarrassing but not deliberative.  *Id.* at 5.  The SEC responds that it provided a sufficiently detailed supplemental *Vaughn* index that describes the relevant decisions the SEC staff were deliberating over for each withholding and that it withheld only exempt material.  Dkt. 30 at 5–7.  Once again, the SEC's position is convincing.

Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The "deliberative process privilege is one of the litigation privileges incorporated into Exemption 5," allowing "an agency to withhold 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.'"  *Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 4 (D.C. Cir. 2014) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975)).  The privilege is "limited to documents that are 'predecisional' and 'deliberative,' meaning they reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Id.* at 7 (quotation marks and alteration omitted); *see also Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) ("[A] document [is] 'predicisional' if it was generated before the adoption of an agency policy and 'deliberative' if it

reflects the give-and-take of the consultative process.").  Where records reflect such predecisional deliberations, the privilege "protects agencies from being 'forced to operate in a fishbowl.'"  *Elec. Frontier Found.*, 739 F.3d at 4 (quotation marks omitted).

The SEC argues that it properly withheld portions of the attorney notes and consumer complaints that described internal SEC "deliberat[ions] [about] how to respond to the various issues raised in the ESRT filing" and that it adequately described those deliberations in the supplemental *Vaughn* index it provided to Edelman.[4]  Dkt. 26 at 3, 14.  Edelman does not seriously dispute that some of the redacted material could have been properly withheld on the basis of Exemption 5, but instead argues that the SEC's *Vaughn* index lacks sufficient detail to support the invocation of the privilege, *see* Dkt. 32 at 3–4 (asserting that the *Vaughn* index "only discuss[es] a type of action the documents were part of, not [the] role [they] played within a policy formulation process" or how "the documents themselves were involved" in the "actual deliberations").  The Court has already rejected an earlier version of this same argument, *see Edelman I*, 172 F. Supp. 3d at 160, and it does so once again.

Notations in the SEC's *Vaughn* index like "internal predecisional deliberations about the handling of a complaint by an investor about ESRT" and "predecisional deliberations of the handling of financial issues raised by investors concerning ESRT filings," *see, e.g.*, Dkt. 30-3 at 29, 33, clearly describe the decisions that were the subject of ongoing deliberations.  And, although the *Vaughn* index frequently uses the less elaborate phrase "notes reflecting

---

[4]  In response to Edelman's argument that its supplemental *Vaughn* index "fail[ed] to describe what [deliberative] processes the withheld documents pertain[ed] to," Dkt. 28-1 at 5, the SEC filed an updated supplemental *Vaughn* index, Dkt. 30-3, indicating the specific "decisions staff members were deliberating," Dkt. 30 at 5 & 5–6 n.2.  Accordingly, the Court will assess the completeness of the SEC's updated *Vaughn* index in determining whether it properly applied Exemption 5.

predecisional deliberations about ESRT's filing," *see, e.g.*, *id.* at 25, 26, when considered in context, this notation leaves little doubt that the deliberations were focused on whether to "approve the creation of the [ESRT] trust," *Edelman I*, 172 F. Supp. 3d at 138.  Although Edelman seeks greater detail, the Court has already explained that there is "no basis to require the SEC to specify the decisions to which each specific [document] was antecedent" because, as the supplemental *Vaughn* index states, the documents were produced "in anticipation of the SEC's determination about whether to allow the ESRT transaction to proceed."  *Id.* at 160.  Greater detail is not necessary to facilitate judicial review or to promote any other purpose embodied in FOIA.

Edelman's additional arguments fare no better.  He accuses the SEC of failing to segregate factual material from "otherwise pre-decisional document[s]" and suggests that "many of the withholdings are not actual deliberations but comments made by SEC staffers about the complainants themselves" that might "cause embarrassment" to the SEC.  Dkt. 28-1 at 5.  But he offers no support for these contentions, and Livornese's declaration directly refutes them, asserting that, "[p]ursuant to Exemption 5, [the SEC's] FOIA Office redacted certain pre-decisional and deliberative information," withholding "*only* information that was exempt."  Dkt. 26-1 at 3 (Second Livornese Decl. ¶¶ 7-8) (emphasis added).  The Livornese declaration, moreover, goes on to offer additional detail about each of the Exemption 5 redactions currently at issue.  *Id.* at 3–5 (Second Livornese Decl. ¶ 8).  "Agency affidavits—so long as they are relatively detailed and non-conclusory—are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims."  *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (quotation marks omitted).  The Livornese declaration meets this standard, and Edelman has offered no reason—beyond unsupported speculation—to question Livornese's testimony.

The Court, accordingly, concludes that the SEC properly withheld portions of the consumer complaints and attorney notes on the basis of the deliberative process privilege.[5]

## C.      Exemption 6 Withholdings

Finally, Edelman challenges the SEC's decision to withhold "the identities of those making complaints to it about the proposed [ESRT] transaction" pursuant to Exemption 6.  Dkt. 28-1 at 5.  "Exemption 6 protects information about individuals in 'personnel and medical files and similar files' when its disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'"  *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 257 (D.D.C. 2016) (quoting 5 U.S.C. § 552(b)(6)).  "The Supreme Court has read 'similar files' broadly to include any '[g]overnment records on an individual which can be identified as applying to that individual,'"  *People for the Am. Way. Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303

---

[5]  In his reply brief, Edelman argues, for the first time, that "the SEC fail[ed] to establish that it conducted a foreseeable harm analysis on [the records redacted under Exemption 5] as now required by the FOIA Improvement Act of 2016."  Dkt. 32 at 4.  The SEC seeks leave to file a sur-reply so that it can address this "new argument" that it would not otherwise be "able to contest."  Dkt. 33 at 1.

The "decision to grant or deny leave to file a sur[-]reply is committed to the sound discretion of the court," *Akers v. Beal Bank*, 760 F. Supp. 2d 1, 3 (D.D.C. 2011), and "court[s] routinely grant[] such motions when a party is unable to contest matters presented to the court for the first time in the last scheduled pleading," *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) (quotation marks omitted).  Here, the SEC has plainly demonstrated that it was not previously able to address the "foreseeable harm analysis" argument which was made for the first time in Edelman's reply brief, and, accordingly, the Court will grant the SEC's motion for leave to file a sur-reply.  *See* Dkt. 33.

Turning to the merits of Edelman's argument, the SEC is correct that the FOIA Improvement Act of 2016 ("the Act") has no bearing on the Court's analysis.  *See* Dkt. 33-1 at 1–2.  The Act, signed into law on June 30, 2016, includes an "applicability" section declaring that it "shall take effect on the date of enactment . . . and shall apply to any request for records . . . *made after the date of enactment*."  FOIA Improvement Act of 2016, Pub. L. No. 114-185, § 6, 130 Stat. 538 (2016) (emphasis added).  Edelman made the FOIA request at issue here in January of 2014, *see* Dkt. 15-3 at 5 (Ex. 2), more than two years before the Act went into effect.

(D.D.C. 2007) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601–02 (1982)),

and the D.C. Circuit has explained that the exemption can sweep in "bits of personal information,

such as names and addresses," *Judicial Watch*, 449 F.3d at 152.  The mere fact that an agency

file or record contains personal, identifying information, however, is not enough to invoke

Exemption 6; in addition, the information must be "of such a nature that its disclosure would

constitute a clearly unwarranted privacy invasion." *Nat'l Ass'n of Home Builders v. Norton*, 309

F.3d 26, 32 (D.C. Cir. 2002).  To make that determination, "the Court [must] employ[] a

balancing test, weighing 'the private interest involved (namely the individual's right of privacy)

against the public interest (namely, the basic purpose of [FOIA], which is to open agency action

to the light of public scrutiny).'"  *People for the Am. Way Found.*, 503 F. Supp. 2d at 304

(quoting *Judicial Watch*, 449 F.3d at 153).  "In undertaking this analysis, the [C]ourt is guided

by the instruction that, under Exemption 6, the presumption in favor of disclosure is as strong as

can be found anywhere in [FOIA]." *Nat'l Ass'n of Home Builders*, 309 F.3d at 32 (quotation

marks omitted).

      The SEC asserts that it withheld the personal identifying information of "members of the

public who contacted the SEC" to lodge complaints "during the ESRT review" process in order

to shield those complainants from "being harassed or ridiculed by any person they may" have

criticized in their complaints.  Dkt. 26 at 10–11.  According to the SEC, releasing this

information "would not shed light on how the government operates," and, thus, the

complainants' privacy interest necessarily outweighs the public interest.  *Id.* at 11.  For his part,

Edelman acknowledges that the third-party complainants "do have a privacy interest in their

identities and certain identifying information," but he argues that their privacy interest is not

particularly strong because the complaints are commercial in nature and because several of the

complainants have, in fact, agreed to the disclosure of their identities.  Dkt. 28-1 at 6–7.  Against this backdrop, he contends that the SEC failed properly to balance the complainants' privacy interests against the public's right to know "[w]ho communicated to the government" and whether "the government took those [communications] into consideration" before making any decisions regarding the ESRT transaction.  *Id.* at 7.  The Court agrees that the SEC has not correctly performed the required balancing and, accordingly, will deny the SEC's motion for summary judgment on this ground.  But, because Exemption 6 implicates the interests of third parties, and because both the factual record and briefing on this issue are incomplete, the Court will not grant Edelman's cross-motion at this time.

The SEC hinges its argument on the mistaken premise that publicly releasing the names of the complainants "would not shed light on how the government operates."  Dkt. 26 at 11. That conclusion ignores the "public interest in knowing who may be exerting influence on [SEC] officials sufficient to convince them to" approve or disapprove a transaction.  *People for the Am. Way Found.*, 503 F. Supp. 2d at 306; *but see id.* at 305–06 (collecting cases arriving at different conclusions).  It ignores the public interest in knowing whether the SEC gives "greater weight to the comments submitted by" some complainants than others.  *Alliance for Wild Rockies v. Dep't of Interior*, 53 F. Supp. 2d 32, 37 (D.D.C. 1999).  And it ignores the public interest in understanding whether particular complaints, which were credited or rejected by the SEC, were based on personal knowledge, financial interests, or other factors.

On the other side of the balance, Edelman argues that the records at issue "concern a commercial transaction," as opposed to "a personal issue," and thus do not implicate a particularly strong privacy interest.  Dkt. 28-1 at 7.  In support of that proposition, Edelman cites a decision from this Court, *Washington Post Co. v. United States Department of Agriculture*, 943

F. Supp. 31, 34–36 (D.D.C. 1996), and a decision from the district court in Oregon, *Oregon Natural Desert Association v. United States Department of the Interior*, 24 F. Supp. 2d 1088, 1089 (D. Or. 1998).  Neither Edelman nor the SEC, however, cite to or discuss a number of D.C. Circuit and Supreme Court precedents bearing on this issue.

In a case much like this one, the D.C. Circuit rejected reliance by the Commodity Futures Trading Commission ("CFTC") on Exemption 6 as a basis for withholding from the Chicago Board of Trade the names of those who had submitted complaints to the CFTC.  *See Bd. of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 399–400 (D.C. Cir. 1980) ("*Board of Trade*").  In reaching that conclusion, the Court of Appeals relied principally on the premise that the reference to "similar files" in Exemption 6 applies only to files that reveal "intimate details" of a person's life, such as "information regarding marital status, legitimacy of children, identity of fathers of children, medical conditions, welfare payments, alcoholic consumption, family fights and reputation." *Id*. at 399 (quotation marks and alteration omitted).  Because the complaints at issue involved "purely commercial matters," the D.C. Circuit held that the FOIA request did not seek "similar files" within the meaning of Exemption 6. *Id.* at 400.  Two years later, however, the Supreme Court rejected that narrow reading of "similar files" and held that "similar files" include all "information which applies to a particular individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 620 (1982).  That portion of the *Board of Trade* holding, accordingly, is no longer controlling.

The *Board of Trade* Court, however, went on to consider the question whether, even if the names at issue were considered "similar files" would "the privacy interests asserted by the [CFTC] outweigh the public interest in complete disclosure," and the Court held that it would not.  627 F.2d at 400.  The only interest that the CFTC identified in support of withholding the

information was the possibility that the Board of Trade might harass the complainants, but the

D.C. Circuit concluded that the CFTC had other tools "to prevent any improper conduct on the

part of Board representatives." *Id.* There is no reason to believe that this alternative holding did

not survive the Supreme Court's decision in the *Washington Post* case, and, indeed, the D.C.

Circuit cited *Board of Trade* with approval four months *after* the Supreme Court's decision for

the proposition that the disclosure of "employment information . . . would be only a minimal

invasion of privacy." *Wash. Post Co. v. U.S. Dep't of Health and Human Servs.*, 690 F.2d 252,

261 (D.C. Cir. 1982).

The Court takes from this line of precedent that personal information that relates to

commercial activity is not categorically beyond the reach of Exemption 6, but that the Court

must engage in a case-specific weighing of the interests at stake and that it is likely, as Edelman

suggests, that the names of commenters on commercial matters implicate less weighty privacy

interests than the type of information that lies at the core of Exemption 6. The Court is aware

that "a number of [complainants] communicated with [the SEC] only with the understanding that

the SEC would try to keep their comments and complaints confidential," Dkt. 30-2 at 2 (Kluck

Decl. ¶ 5), and that "release of information provided under a pledge of confidentiality"—if such

a pledge was made here—"involves a greater invasion of privacy than release of information

provided without such a pledge," *Wash. Post. Co.*, 690 F.2d at 263. But that, also, is not

dispositive. Rather, as the D.C. Circuit has observed, "allow[ing] the government to make

documents exempt [from disclosure] by the simple means of promising confidentiality would

subvert FOIA's disclosure mandate." *Id.* And finally, as Edelman observes, it appears that at

least some of the complainants have no objection to disclosure of their identities.

16

Given the fact-intensive nature of the required inquiry, the Court cannot accept the SEC's invitation to sustain its application of Exemption 6 to all identifying information about all of the complainants.  This is not to say, however, that the SEC cannot make a sufficient showing that the identities of *some* of the complainants implicate privacy interests that outweigh the public interest in disclosure.  But because the current record lacks sufficient information for the Court to conduct the required balancing, and because the SEC (which mistakenly concluded that providing the complainants' names "would not shed light on how the government operates," Dkt. 26 at 11) should conduct the relevant balancing in the first instance, the Court will deny summary judgment at this time.[6]  The parties are directed to meet and confer regarding this issue and if, after applying the analysis set forth above to the relevant facts, a dispute remains, the SEC may file a renewed motion for summary judgment addressing solely this issue.  Any such renewed motion shall provide a detailed factual basis for the SEC's conclusions and shall be supported by further legal analysis of the issues outlined above.

---

[6]  The Court also notes that, even though Edelman "underst[oo]d and expect[ed] the names of investors to be redacted to protect confidentiality" when he made his FOIA request, *see* 15-3 at 5 (Ex. 2), the SEC does not rely on this disclaimer to justify its withholding of the complainants' names.  Nowhere in its *Vaughn* index does the SEC explain that it withheld the complainants' names "at Edelman's request" or "consistent with Edelman's FOIA request;" rather, the SEC justifies its withholdings with a reference to Exemption 6.

**CONCLUSION**

For these reasons, the Court will **GRANT** in part and **DENY** in part the SEC's renewed

motion for summary judgment, Dkt. 26, will **DENY** Edelman's renewed motion for summary

judgment, Dkt. 28, and will **GRANT** the SEC's motion to file a sur-reply, Dkt. 33.

A separate Order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 6, 2017