UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD EDELMAN,

*Plaintiff*,

v.

SECURITIES AND EXCHANGE
COMMISSION,

*Defendant*.

Civil Action No. 14-1140 (RDM)

## MEMORANDUM OPINION

Plaintiff Richard Edelman operates a website on which he publishes information relating to the transfer of "ownership of the Empire State Building" to the Empire State Realty Trust ("ESRT"). *Edelman v. SEC*, 172 F. Supp. 3d 133, 138 (D.D.C. 2016) (*Edelman I*). Following the formation of the ESRT, investors in the Empire State Building "bec[a]me investors in the ESRT." Dkt. 39-2 at 1 (Pl.'s SUMF ¶ 2). In 2014, Edelman lodged six requests for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, with the Securities and Exchange Commission ("SEC"), seeking documents relating to the SEC's "review of the . . . transaction." *Edelman I*, 172 F. Supp. 3d at 138. Among other records, Edelman requested "a set of complaints submitted by Empire State Building investors to the SEC." *Id.* at 140. Dissatisfied with the SEC's response, Edelman filed this FOIA action. Dkt. 1. The Court has already resolved two rounds of dueling motions for summary judgment, *see Edelman I*, 172 F. Supp. 3d 133; *Edelman v. SEC*, 239 F. Supp. 3d 45 (D.D.C. 2017) (*Edelman II*), and the matter is now before the Court on the third—and final—round of summary judgment motions, *see* Dkt. 37; Dkt. 39.

The only question that remains is whether the SEC may withhold the identities of thirty-six investors (or associated parties) in the Empire State Building who contacted the SEC to voice concerns regarding the creation of the ESRT. The answer turns on whether the complainants' privacy interest outweighs the public interest in knowing their identities. Applying this balancing test, the Court concludes that the SEC is not required to disclose the identities of the thirty-six complainants. The Court, accordingly, will **GRANT** the SEC's motion for summary judgment, Dkt. 37, and will **DENY** Edelman's cross-motion for summary judgment, Dkt. 39.

## I. BACKGROUND

The factual background and procedural history of this case have been described at length in the Court's earlier memorandum opinions. *See Edelman I*, 172 F. Supp. 3d at 138–42; *Edelman II*, 239 F. Supp. 3d at 49–50. As relevant to the motions currently before the Court, the SEC produced 1,447 pages of consumer complaint documents. Dkt. 37-1 at 1–2 (Second Barss Decl. ¶ 4). In doing so, however, the SEC redacted the names of seventy individuals "who had communicated their concerns . . . about the ESRT transaction" to the SEC. *Id.* (Second Barss Decl. ¶ 4). The seventy complainants "included individual investors in the [Empire State Building], relatives of investors, and trustees of family trusts that hold . . . shares" in the property. *Id.* (Second Barss Decl. ¶ 4).

The last time this case was before the Court, the SEC invoked Exemption 6 to justify the redactions. Exemption 6 "protects information about individuals in 'personnel and medical files and similar files' when its disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 257 (D.D.C. 2016) (quoting 5 U.S.C. § 552(b)(6)). The SEC asserted that Exemption 6 permitted it "to shield [the] complainants from being harassed or ridiculed by any person they may have criticized in their

complaints." *Edelman II*, 239 F. Supp. 3d at 55 (internal quotation marks and citation omitted). Edelman countered that their privacy interest was "not particularly strong because the complaints are commercial in nature and because several of the complainants have . . . agreed to the disclosure of their identities." *Id.* In *Edelman II*, the Court denied both motions for summary judgment on this point. *Id.* at 57. The Court explained its reasoning as follows:

> Given the fact-intensive nature of the required inquiry, the Court cannot accept the SEC's invitation to sustain its application of Exemption 6 to all identifying information about all of the complainants. This is not to say, however, that the SEC cannot make a sufficient showing that the identities of *some* of the complainants implicate privacy interests that outweigh the public interest in disclosure. But because the current record lacks sufficient information for the Court to conduct the required balancing, and because the SEC . . . should conduct the relevant balancing in the first instance, the Court will deny summary judgment at this time.

*Id.*

In accordance with *Edelman II*, the SEC subsequently disclosed the names of thirty-four of the seventy complainants. Those complainants, the SEC explained, had (1) "stated in affidavits . . . that their names need not be withheld;" (2) "given interviews about the ESRT transaction;" (3) "posted their concerns on [the] [I]nternet;" or (4) "appeared as parties [or] counsel [in] lawsuits against the ESRT trustees." Dkt. 37-1 at 2 (Second Barss Decl. ¶ 5). The remaining thirty-six complainants, however, do not appear to have engaged in any such public activity. *Id.* (Second Barss Decl. ¶ 6). The SEC, accordingly, has continued to withhold their names on the grounds that this information falls within Exemption 6. *See id.* (Second Barss Decl. ¶ 6). The SEC has now renewed its motion for summary judgment, Dkt. 37, and Edelman has renewed his cross-motion, Dkt. 39.

## II. LEGAL STANDARD

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56. *See, e.g.*, *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175

(D.D.C. 2011). To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56. In a FOIA action, the agency may meet its burden by submitting "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and an index of the information withheld, *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). Because "it is the function, not the form, of the [*Vaughn*] index that is important," *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987), an agency may submit a declaration "in lieu of the index itself," so long as the declaration adequately identifies the records withheld and the agency's reasons for doing so, *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006). An agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). The Court reviews the agency's decision *de novo*, and the agency bears the burden of sustaining its action. 5 U.S.C. § 552(a)(4)(B).

### III. ANALYSIS

The Freedom of Information Act "mandates that an agency disclose records on request, unless they fall within one of nine [exclusive] exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). All that remains at issue in this third round of cross-motions for summary judgment is Exemption 6.

Exemption 6 provides that an agency need not disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The parties—and the Court—agree that the information at issue here—the identities of the complainants—is contained in "similar files" and thus satisfy Exemption 6's threshold requirement. *See* Dkt. 37 at 4; Dkt. 39-1 at 2 n.2; *see also Edelman I*, 239 F. Supp. 3d at 54–55; *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007). The more difficult question is whether disclosure of the thirty-six complainants' identities "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To make that determination, the Court employs a two-step test. First, the Court must decide whether "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (internal quotation marks omitted). Second, if so, the Court must weigh "the private interest involved (namely, the individual's right of privacy) against the public interest (namely, . . . to open agency action to the light of public scrutiny)." *Judicial Watch*, 449 F.3d at 153 (internal quotation marks omitted).

With respect to the first step, the Court concludes that disclosure would compromise a substantial privacy interest. To be sure, Exemption 6 "does not categorically exempt individuals' identities" from disclosure "because the privacy interest at stake may vary depending on the context in which it is asserted." *Am. Immigration Lawyers' Ass'n v. Exec. Office of Immigration Review*, 830 F.3d 667, 675 (D.C. Cir. 2016) (quoting *Judicial Watch*, 449 F.3d at 153). Here, however, the SEC—at least now—does not purport to assert a categorical exemption. Rather, following the Court's decision in *Edelman II*, the SEC engaged in a case-by-case review of the privacy interests at stake, and it disclosed the identities of roughly half of the

5

seventy complainants. Dkt. 37-1 at 2 (Second Barss Decl. ¶ 5). Those individuals, the SEC has explained, had either previously indicated "that their names need not be withheld" or had made public statements about the ESRT transaction or had appeared as parties or counsel in lawsuits about the transaction. *Id.* (Second Barss Decl. ¶ 5). But, as to the remaining thirty-six complainants, the SEC has concluded that disclosure of their identities "would interfere with a general expectation that the public can complain to the government in privacy; could subject them to retaliation, harassment[,] and ridicule; and could reveal information about their personal financial interests." Dkt. 37 at 4.

Edelman does not dispute that harms of this type may at times meet the substantial-privacy-interest hurdle of Exemption 6. In his view, however, this is not such a case because the SEC has erroneously "assum[ed] that the identities of [the] investors . . . [are] confidential and not generally known." Dkt. 39-1 at 5. That assumption is incorrect, according to Edelman, because "[t]he list of former investors in the [Empire State Building] is not confidential." Dkt. 39-3 at 1 (Edelman Decl. ¶ 4); *see also* Dkt. 39-4 (list of former investors). To Edelman, this fact "negates many of the [SEC's] claims that the . . . complainants' privacy interest will be violated by the release of their identities." Dkt. 39-1 at 5.

Edelman's argument is unavailing. First, the factual premise of the argument is incorrect. As the SEC explains, it compared the list of former Empire State Building investors that Edelman provided "against the names of the thirty-six complainants whose names were withheld" and found that "[o]nly eight of those names were on [Edelman's] list." Dkt. 40-1 at 1 (Third Barss Decl. ¶ 4). But, even putting that significant factual limitation aside, Edelman's argument fails to join issue with the SEC's principal concern: disclosing the identities of the thirty-six complainants who have not publicly aired their objections "would interfere with a

6

general expectation that the public can complain to the government in privacy" and could subject those who filed complaints "to retaliation [and] harassment."[1] Dkt. 37 at 4. That is, although the identity of the Empire State Building investors may already be known, the complainants' interest lies in not being known as *complainants*, and that information is not public.

The SEC's concerns about potential harassment, moreover, are not merely conjectural. The SEC notes, for example, that a number of the investors who voiced objections to the SEC regarding the ESRT transaction "expressed their fear that ESRT management would retaliate against them if ESRT discovered that they submitted complaints to the SEC regarding the transaction," and "a number of investors . . . asked for confidentiality." Dkt. 37-2 at 2 (Second Kluck Decl. ¶ 5). Although the SEC failed to maintain a list of those who requested confidentiality, *id.* (Second Kluck Decl. ¶ 6), and although an agency's promise of confidentiality is not dispositive, *see Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 263 (D.C. Cir. 1982), these comments demonstrate that the SEC's stated concerns are not hypothetical and that at least some of the thirty-six complainants whose identities the SEC has withheld fear retaliation or harassment. Their concerns, moreover, find some validation in the fact that the transaction at issue remains the subject of litigation in which those in favor of, and those opposed to, the transaction have been urged to take sides. *See Shasha v. Malkin*, No. 14-cv-9989 (S.D.N.Y). Indeed, by Edelman's own account, all of the investors in the Empire State Building "have already been contacted by the plaintiffs in that case to join as plaintiffs or

---

[1] The SEC also asserts that disclosure "could reveal information about [the complainants'] personal financial interests." Dkt. 37 at 4. On the present record, the Court cannot determine the extent to which the financial information contained in the complaints overlaps with the information that can be gleaned from Edelman's list of purported former investors in the Empire State Building. *See* Dkt. 42 at 3–4. But, given the Court's conclusion that the risk of retaliation and harassment is sufficient to establish a substantial privacy interest, the Court need not rely on this additional basis for the SEC's decision.

witnesses." Dkt. 39-3 at 2 (Edelman Decl. ¶ 8). It is not difficult to imagine that, armed with complaints that could be tied to particular investors, those investors might be contacted again or that others—such as investors' family members—might be contacted.

Under other circumstances, courts have recognized that disclosing the identity of complainants may implicate substantial privacy interests. In *Wisdom v. U.S. Trustee Program*, for example, a FOIA requester objected to the redaction "of the names of individuals who [had] complained to the agency about [a private bankruptcy trustee's] demeanor" and "similar identifying information." 232 F. Supp. 3d 97, 123 (D.D.C. 2017). In sustaining the agency's invocation of Exemption 6, the court observed that, even where other "identifying information is . . . available in public records, individuals may still retain a privacy interest in avoiding the association of their names with complaints or other disciplinary actions." *Id.* at 124. There, as here, the agency asserted that disclosure of the complainant's identities "could subject the individuals involved to 'unnecessary public attention, harassment, or embarrassment'" and could "stymie the government's efforts to obtain candid information." *Id.* at 125. The court concluded that this asserted privacy interest was substantial. *Id.* "Indeed," the *Wisdom* court explained, "courts have routinely upheld the withholding of complainants' names on similar rationales." *Id.* (citing *Lakin Law Firm, P.C. v. FTC*, 352 F.3d 1122, 1125 (7th Cir. 2003)). Years earlier, Judge Gesell touched on a similar theme in *Center for Auto Safety v. National Highway Traffic Safety Administration*, stressing that "[t]he public interest . . . encompasses . . . the interests of citizens generally to complain to their government in privacy." 809 F. Supp. 148, 150 (D.D.C. 1993).

To be sure, that interest is not universal, and it does not categorically protect the identities of those who complain to the government. In light of the particular facts of this case, however,

the Court concludes that the privacy interests of the thirty-six complainants, who have not joined the public debate over the wisdom or lawfulness of the ESRT transaction, are substantial.

The second step of the inquiry requires the Court to weigh this (substantial) privacy interest against the public interest in disclosure. As the Supreme Court has explained, "the only relevant 'public interest in disclosure' to be weighed . . . is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 (1994) (emphasis omitted) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989)). The SEC previously produced 71 pages of attorney notes and 1,447 pages of consumer complaints to Edelman, *see Edelman II*, 239 F. Supp. 3d at 50, and has now "produced the names of thirty-four of the[] [c]omplainants," Dkt. 37-1 at 2 (Second Barss Decl. ¶ 5). The "relevant question, then, . . . is whether, given the information already disclosed by [the SEC], the 'incremental value' served by disclosing [the complainants'] name[s] outweighs [their] privacy interest." *Am. Immigration Lawyers*, 830 F.3d at 674.

When this case was last before the Court, the SEC asserted—without elaboration—that disclosing the names of the complainants "would not shed light on how the government operates." Dkt. 26 at 11; *see* Dkt. 30 at 10. The Court rejected this conclusory assertion, noting that it ignored the public interest (1) in "'knowing who may be exerting influence on [SEC] officials sufficient to convince them to' approve or disapprove a transaction," *Edelman II*, 239 F. Supp. 3d at 55 (quoting *People for the Am. Way Found.*, 503 F. Supp. 2d at 306); (2) in "knowing whether the SEC gives 'greater weight to the comments submitted by' some complainants than others," *id.* (quoting *All. for Wild Rockies v. Dep't of Interior*, 53 F. Supp. 2d

9

32, 37 (D.D.C. 1999)); and (3) in "understanding whether particular complaints, which were credited or rejected by the SEC, were based on personal knowledge, financial interests, or other factors," *id.* at 55–56.

In its renewed motion for summary judgment, the SEC has provided the Court with more information on the SEC's role with respect to the ESRT formation and the purposes for which it considered the complaints. According to Samuel Kluck, a Legal Branch Chief in the Office of Real Estate and Commodities of the SEC, the ESRT "filed the Form S-4 registration statement that involved a consent solicitation to approve the consolidation of several properties, including [the Empire State Building], into [the] ESRT[,] which would then qualify as a real estate investment trust." Dkt. 37-2 at 1 (Second Kluck Decl. ¶ 2). The SEC then "review[ed] [the] ESRT's registration statement and related filings" in order to "comment on any potential disclosure deficiencies under the federal securities laws." *Id.* at 2 (Second Kluck Decl. ¶ 4). The SEC "did not make any policy determinations on whether the ESRT transaction was fair to investors, nor [did the SEC] pass upon its merits, [its] fairness[,] or the accuracy of the disclosure." *Id.* (Second Kluck Decl. ¶ 4). The complaints, according to the SEC, played only a limited role in its review of the registration statement: SEC personnel merely "considered whether the complaints identified any legal issues about the ESRT transaction," and, more importantly, they "did not look to the complaints [for] policy guidance." Dkt. 37 at 9. Edelman has received the complaints, and he has now learned the identity of about half of the complainants. Beyond that, he also knows that the remaining complainants were "individual investors, relatives of investors, and trustees of family trusts that hold . . . shares" in the Empire State Building and, thus, had an interest in the transaction. *Id.*

10

With the benefit of this additional information, the Court agrees with the SEC that the public interest in the identities of the thirty-six remaining complainants is minimal. Under FOIA, the only relevant public interest is the interest in illuminating "the operations or activities of the government." *Am. Immigration Lawyers*, 830 F.3d at 674 (citation omitted). It is difficult to discern what "incremental" insight into the work of the SEC the specific identities of the thirty-six remaining complainants might convey. Edelman posits that this information would, "when taken into account with the complaints themselves, show how the SEC evaluated and weighed the communications on the ESRT issues." Dkt. 39-1 at 8. But that conclusion is at odds with the SEC's description of both its limited role in the transaction and the even more limited role of the complainants. Edelman has not offered any reason to think that the name corresponding to a given complaint will reveal "how the SEC evaluated [or] weighed" that complaint. *Id.*

Edelman also asserts that disclosure would "verify the statements about the government's action on the ESRT transaction stated in the Kluck Declaration." *Id.* To the extent that Edelman is suggesting that the averments in the Kluck Declaration are unreliable, it suffices to note that "declarations provided by agencies are generally 'accorded a presumption of good faith, which cannot be rebutted by purely speculative claims.'" *Spataro v. Dep't of Justice*, 279 F. Supp. 3d 191, 204 (D.D.C. 2017) (quoting *SafeCard*, 926 F.2d at 1200). And Edelman has failed to present any reason to doubt the veracity of the Kluck Declaration.

Edelman contends that "the Court has [already] found . . . [that] there is a public interest in the withheld information." Dkt. 39-1 at 8; *see* Dkt. 42 at 6. As explained above, however, the Court in *Edelman II* simply concluded that the SEC had failed to substantiate its assertion that the public interest would not be served by disclosure based on the record before the Court at that

11

time. In contrast, the SEC's renewed motion for summary judgment and the accompanying Kluck Declaration demonstrate that disclosing the identities of the complainants would reveal little, if anything, about the SEC's efforts to identify disclosure defects in the ESRT's registration statement. As the Supreme Court has explained, FOIA's objectives are "not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporters Comm. for Freedom of Press*, 489 U.S. at 773. In this case, disclosing the identities of the thirty-six complainants "would not shed any [meaningful] light on the conduct of [the SEC]." *Id.*

On the other side of the scale, moreover, the Court has already concluded that the unidentified complainants have a substantial privacy interest in maintaining the confidentiality of their submissions. That interest might, of course, diminish over time. For present purposes, however, there is no reason to doubt the SEC's implicit representation that the interest remains live, and the pending litigation over the ESRT transaction provides some confirmation of that premise. Finally, neither Edelman nor the SEC identified any "other tools" that the SEC might employ to prevent harassment of the complainants. *See Edelman II*, 239 F. Supp. 3d at 56 (citing *Bd. of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 400 (D.C. Cir. 1980)).

Because the complainants' privacy interest in nondisclosure is substantial and the public interest in disclosure is *de minimis*, disclosing the identities of the complainants "would constitute a clearly unwarranted invasion of personal privacy."[2] 5 U.S.C. § 552(b)(6). The

---

[2] Edelman contends that the SEC must produce a *Vaughn* index "listing each of the 36 instances where the identities of the complainant is withheld." Dkt. 39-1 at 4. As the D.C. Circuit has explained, the agency need only "give the reviewing court a reasonable basis to evaluate the claim of privilege." *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994). Here, "[i]t would make little sense . . . for the [SEC] to address each of the [complainants] separately; the [Kluck] [D]eclaration makes clear that all [thirty-six complainants' identities] are being withheld for the very same reasons." *Judicial Watch, Inc. v. U.S. Dep't of State*, 2017 WL 3913212, at *5

Court will, accordingly, **GRANT** the SEC's motion for summary judgment, Dkt. 37, and will

**DENY** Edelman's cross-motion for summary judgment, Dkt. 39.

A separate Order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 23, 2018

---

(D.D.C. Sept. 6, 2017). Furthermore, a *Vaughn* index in these circumstances would have little, if any, value. As the SEC explains, "[t]he only reason Edelman provides for seeking a *Vaughn* index is [that] he believes that the SEC [should indicate] which [c]omplainants sought confidentiality." Dkt. 40 at 3. But the fact that only some of the complainants sought confidentiality does not alter the Court's conclusion that all of them have a substantial privacy interest in the nondisclosure of their identities.