# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RICHARD EDELMAN,

    *Plaintiff*,

v.

SECURITIES AND EXCHANGE COMMISSION,

    *Defendant*.

Civil Action No. 14-1140 (RDM)

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Richard Edelman's motion for attorneys' fees. Dkt. 46. In 2014, Edelman submitted six requests for agency records to Defendant the Securities and Exchange Commission ("SEC") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Among other things, he sought records relating to the SEC's review of filings and "consumer complaint[s]" regarding the consolidation of several properties, including the Empire State Building, into the Empire State Realty Trust ("ESRT"), a real estate investment trust. *Edelman v. SEC*, 302 F. Supp. 3d 421, 423 (D.D.C 2018) (*Edelman III*). Edelman maintains a website that disseminates information about the creation of the ESRT. *See Edelman v. SEC*, 172 F. Supp. 3d 133, 138 (D.D.C. 2016) (*Edelman I*). After the SEC failed to respond to his requests, he filed this action, Dkt. 1, which the Court resolved on the merits in three memorandum opinions. *See Edelman III*, 302 F. Supp. 3d at 421; *Edelman v. SEC*, 239 F. Supp. 3d 45, 48 (D.D.C. 2017) (*Edelman II*); *Edelman I*, 172 F. Supp. 3d at 138. Edelman has now moved for an award of attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E). *See* Dkt. 46. For the reasons explained below, the Court will **DENY** that motion.

# I. BACKGROUND

The Court has set forth the factual background and procedural history of this case in its previous memorandum opinions, *see Edelman I*, 172 F. Supp. 3d at 138; *Edelman II*, 239 F. Supp. 3d at 48–50; *Edelman III*, 302 F. Supp. 3d at 423–24, and will repeat only those facts relevant to the pending motion.

Edelman submitted six FOIA requests to the SEC in 2014. Among other things, he sought various filings submitted by the ESRT to the SEC, the SEC's comments on any potential disclosure deficiencies, any responses from the ESRT to those comments, meeting notes and emails to and from the SEC attorneys working on the matter, exhibits submitted by the ESRT or its predecessor that referenced the sublease for the Empire State Building, any materials submitted by the ESRT that sought confidential treatment by the SEC, any "consumer complaints" submitted by Empire State Building investors to the SEC relating to its review of the proposed transaction, correspondence between the SEC and Malkin Holdings (the company advocating for the conversion of the Empire State Building's ownership structure into a real estate investment trust), records relating to Edelman's FOIA requests, and records reflecting communications between the SEC and any government official not employed by the SEC regarding the ESRT. S*ee Edelman I*, 172 F. Supp. 3d at 138–141 (describing FOIA requests).

Before Edelman brought suit, the SEC responded to one of his six requests, and, shortly after he brought suit, it responded to the remaining five requests and released more than 2,000 pages of responsive records. *Id.* at 137, 141. The parties then filed their first set of motions for summary judgment. Dkt. 15; Dkt. 16. After considering those submissions, the Court ruled in favor of the SEC on some issues and in favor of Edelman on others. The Court agreed with the SEC that Edelman had failed to exhaust his administrative remedies with respect to one of his six

requests. *Edelman I*, 172 F. Supp. 3d at 142–44. It also agreed with the SEC that most of the SEC's searches were reasonable and adequate, *id.* at 144–58, and that the SEC had lawfully withheld all or portions of six documents pursuant to FOIA Exemption 5, *id.* at 158–61. The Court ruled in Edelman's favor, however, on three issues. The Court first held that the SEC should have broadly construed one of Edelman's FOIA requests to seek "consumer complaints," and not simply records reflecting the SEC's responses to those complaints. *Id.* at 155–56. Second, the Court held that the SEC erred in treating attorneys' notes as categorically beyond the scope of FOIA and, instead, should have determined on a case-by-case basis whether the notes were exempt from disclosure. *Id*. at 147–54. Finally, the Court held that it could not determine whether one document was properly redacted pursuant to Exemption 5 and, accordingly, ordered that the SEC produce an unredacted version of the document to the Court for *in camera* review. *Id*. at 159.

Following *Edelman I*, the SEC released 1,446 pages of consumer complaints, 71 pages of attorney notes, and (without the need for further judicial intervention) an unredacted version of the document that the Court had directed the SEC to submit for *in camera* review. *Edelman II*, 239 F. Supp. 3d at 50 n.3. The parties then renewed their cross-motions for summary judgment. *See* Dkt. 26; Dkt. 28. This time, the Court rejected Edelman's contentions that the SEC had conducted an inadequate search for "consumer complaints" and that it had improperly invoked the deliberative process privilege. *Edelman II*, 239 F. Supp. 3d at 51–54. The Court, however, was unable to resolve the question whether the SEC had permissibly redacted the names of seventy individuals who had filed consumer complaints with the agency because the existing record lacked "sufficient information for the Court to conduct the required balancing, and because the SEC . . . should conduct the relevant balancing in the first instance." *Id*. at 57. The

Court, accordingly, denied both parties' motions for summary judgment with respect to that one issue. *Id.*

The SEC subsequently disclosed the identities of thirty-four of the seventy complainants and withheld the names of the remaining thirty-six complainants. *Edelman III*, 302 F. Supp. 3d at 424. As the SEC explained, the thirty-four complainants whose identities were disclosed had, elsewhere, engaged in public activity relating to the ESRT transaction. *Id.* But the remaining thirty-six complainants had not publicly associated themselves with the issue. *Id.* The parties once again moved for summary judgment. *See* Dkt. 37; Dkt. 39. The third time around, the Court ruled in the SEC's favor, holding that the unidentified complainants had a substantial privacy interest in nondisclosure and that the public's interest in disclosure was *de minimis*. *Edelman III*, 302 F. Supp. 3d at 429. With that decision, Edelman's case was finally resolved on the merits.

Edelman now invokes 5 U.S.C. § 552(a)(4)(E) and requests that the Court award him $99,843.75 in attorneys' fees and $559.22 in costs. Dkt. 49 at 9.

## II. ANALYSIS

Under 5 U.S.C. § 552(a)(4)(E)(i), the Court may "assess . . . reasonable attorney fees and other litigation costs reasonably incurred" by a FOIA plaintiff who "has substantially prevailed." The test for an award of fees "has two components: eligibility and entitlement." *Gerhard v. Fed. Bureau of Prisons*, 258 F. Supp. 3d 159, 165 (D.D.C. 2017). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation omitted). "If so, the [C]ourt proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* "To obtain attorneys' fees under FOIA, a plaintiff must

satisfy" both prongs of the test. *See McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014). Moreover, if the plaintiff is eligible for and entitled to fees, he must demonstrate that the award he seeks is "reasonable." 5 U.S.C. § 522(a)(4)(E)(i); *see also Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 197 F. Supp. 3d 290, 293–94 (D.D.C. 2016).

**A.     Eligibility**

As relevant here, Edelman may establish that he "has substantially prevailed" by showing that he "obtained relief through either . . . a judicial order. . . [or] a voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii). The second approach—a voluntary change in position—codifies the so-called "catalyst theory," which asks whether the "litigation substantially caused the requested records to be released."[1] *N.Y.C. Apparel F.Z.E. v. U.S. Customs and Border Prot. Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008) (citations omitted); *see also Brayton*, 641 F.3d at 524–25. Under the catalyst theory, a plaintiff must show that "the action could reasonably be regarded as necessary to obtain the information" and that "a causal nexus exists between [the] action and the agency's surrender of the information." *Harvey v. Lynch*, 178 F. Supp. 3d 5, 7 (D.D.C. 2016) (quoting *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981)). Eligibility is "largely a question of causation," *Church of Scientology*, 653 F.2d at 587, and causation "is missing when disclosure results not from the suit but from delayed administrative processing," *Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009).

---

[1]   In 2001, the Supreme Court held that "the 'catalyst theory' [was] not a permissible basis for the award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001). Congress responded with the OPEN Government Act of 2007, which added the catalyst theory as a basis for concluding that a plaintiff has substantially prevailed. *See* 5 U.S.C. 552(a)(4)(E)(ii); *see also Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010).

Edelman claims that he is "[u]nquestionably . . . eligible for a fee award" because he has substantially prevailed in two ways. Dkt. 46-1 at 4. He asserts, first, that he obtained a judicial decision holding that the SEC had "failed to properly search 113 pages of attorney notes," that the SEC "failed to properly construe [his] request and search for documents about complaints themselves," and that the SEC "failed to adequately justify a document withheld pursuant to FOIA Exemption 5." *Id.* at 2. Due to the Court's order, Edelman contends, the SEC "located and released more than a thousand additional pages of responsive material to plaintiff." *Id.* Following a subsequent decision, moreover, the SEC "released identifying information about 34 of 70 complainants it had previously withheld." *Id.* at 2–3. Second, he contends that, even before the Court intervened, his lawsuit served as the catalyst for the SEC's initial production of more than 2,000 pages of records. *Id.* at 4.

The SEC does not dispute Edelman's first argument and, instead, contends that, because "he did not prevail on most of [the] issues he briefed," Dkt. 48 at 8, he is "not eligible to receive most of the fees he seeks," *id.* at 9. According to the SEC, the filing of the lawsuit was not a "catalyst" for its initial production; it asserts, to the contrary, that it had already begun "processing Edelman's requests" when he filed suit. *Id.* at 8. The delay in processing Edelman's requests, the SEC explains, stemmed from the nature of the requests, which "were complex and required consultation with several other offices," and not from any intransigence on the part of the SEC. *Id.*

The Court agrees that Edelman is eligible for attorneys' fees. In *Edelman I*, the Court held that the SEC had construed his request concerning consumer complaints too narrowly and ordered the SEC to renew its search for responsive documents "on the understanding that . . . the request encompasse[d] not just documents *about* the complaints but the complaints *themselves*."

6

172 F. Supp. 3d at 156. The Court also held that attorney notes were not categorically exempt from disclosure and, accordingly, directed the SEC to review the attorney notes it had previously withheld and to produce any responsive, non-exempt records. *Id.* at 154–55. As a result, the SEC released more than 1,500 pages of previously withheld records. *Edelman II*, 239 F. Supp. 3d at 50. A FOIA plaintiff "may be considered [a] prevailing part[y]" for purposes of attorneys' fees "if they succeed on any significant issue in litigation [that] achieves some of the benefit [he] sought in bringing the suit." *Edmonds v. FBI*, 417 F.3d 1319, 1326–27 (D.C. Cir. 2005) (quoting *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)). The Court's "judicial order" in *Edelman I* afforded Edelman tangible "relief" in the form of agency records that he would not have obtained without filing suit, and Edelman, accordingly, "has substantially prevailed" in this litigation. 5 U.S.C. § 552(a)(4)(E)(ii). The SEC's remaining argument—that Edelman should not receive fees with respect to the issues on which he did not prevail—does not bear on his "eligibility" for an award but, rather, bears on his "entitlement" to fees and the reasonableness of his fee request.

**B.     Entitlement**

The Court's conclusion that Edelman is eligible for fees "does not end the inquiry—the Court must still decide whether [he] is entitled to [fees]." *Gerhard*, 258 F. Supp. 3d at 167; *see also Brayton*, 641 F.3d at 525. Four factors—although not exclusive—are relevant to this inquiry: "'(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding' of the requested documents." *McKinley*, 739 F.3d at 711 (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)) (quotations omitted). "[T]he first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008). The fourth factor, in contrast, considers whether the agency's

7

position "had a reasonable basis in law," *Tax Analysts,* 965 F.2d at 1096, and asks whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior," *McKinley*, 739 F.3d at 712 (internal citations omitted). "If the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law," however, "that will be weighed along with other relevant considerations in the entitlement calculus." *Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993).

When considering these factors, "courts must remain cognizant of the purposes of FOIA's attorney fee provision." *Wadelton v. Dep't of State*, No. 13-CV-412, 2018 WL 4705793, at *4 (D.D.C. Sept. 30, 2018). The provision exists to "remove the incentive" for agencies to deny FOIA requests based on "the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation" rather than on "the merits of exemption claims." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977). Although the fee provision was not designed to "reward . . . any litigant who successfully forces the government to disclose information it wished to withhold," *id.*, a "grudging application of th[e] provision, which would dissuade those who have been denied information from invoking their right to judicial review, would be clearly contrary to congressional intent," *id.* at 715. The four-factor test is ultimately "a heuristic, a somewhat crude mechanism for testing whether fees in a particular case are consistent with the purposes for which Congress subsidized FOIA litigation." *Davy*, 550 F.3d at 1166 (Tatel, J., concurring). "The touchstone" is, most simply put, "whether an award of attorney fees is necessary to implement the FOIA." *Nationwide Bldg. Maint., Inc,* 559 F.2d at 715.

As the Court explains below, the Court concludes that awarding attorneys' fees in this case would not serve the purposes of the FOIA fees provision.

1. *Public Benefit*

The first factor—"the public benefit derived from the case," *Tax Analysts*, 965 F.2d at 1093—does not weigh in favor of the award of attorneys' fees, and, if anything, weighs slightly against such an award. This factor requires the Court to consider whether "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citations omitted). "The release of any government document," of course, "benefits the public by increasing citizens' knowledge of their government." *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979). Indeed, FOIA is premised on the notion that the release of government records is necessary to shed light on the workings of government. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "[B]ut Congress did not have this sort of broadly defined benefit in mind . . . in enacting" the FOIA fees provision. *Fenster*, 617 F.2d at 744; *see also Cotton*, 63 F.3d at 1120. The Court must, accordingly, consider what "contribution . . . to the fund of public knowledge," above and beyond providing public access to the work of a government agency, the FOIA requests at issue sought to achieve. *McKinley*, 739 F.3d at 711.

In reviewing Edelman's fee request, the Court cannot discern any basis for concluding that Edelman's FOIA requests were "likely to add to the fund of information that citizens use in making vital political choices." Dkt. 46-1 at 5 (quoting *Cotton*, 63 F.3d at 1120). He asserts, for example, that his success led to the release of "thousands of never-before released pages of documents." *Id*. To the extent that Edelman means that his requests yielded a public benefit because they caused the SEC to produce a large quantity of records, Edelman confuses the

9

"eligibility" and "entitlement" inquiries. As discussed above, a FOIA plaintiff is eligible for attorneys' fees only if she has substantially prevailed. The public-benefit analysis, however, is not focused on whether the FOIA plaintiff has succeeded in compelling the defendant to release agency records. Instead, the Court must make an "*ex ante* assessment of the *potential value* of the information requested." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016) (*Morley I*) (emphasis added). The *potential value* of the records sought is a wholly distinct inquiry from the *actual quantity* of records actually received.

But more significantly, Edelman never identifies what information of significant "public value" his FOIA requests sought to reveal. Beyond merely reporting his success in compelling the SEC to release thousands of pages of records, Edelman's motion simply asserts: (1) that he "uploaded and provided analysis on many of these documents to EmpireStateBuilding Investors.com, which is a website used by investors and journalists to learn about investments in the Empire State Building;" (2) that he "forced the SEC to perform its statutory FOIA duties;" and (3) that "there is clearly a public benefit from [his] FOIA litigation."[2] Dkt. 46-1 at 5–6. That is the total of his argument, and it amounts to little more than *ipse dixit*.

---

[2] Edelman makes essentially the same points in his reply brief:

> Defendant contends that plaintiff's release of documents does not add to "the fund of information that citizens may use in making vital political choices." Defendant's Opposition at 11 citing *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). Defendant's reliance on *Cotton* is misplaced. The fee award made by the district court in *Cotton* that was found to misapply the public benefit test of entitlement was based on a court decision that the Smithsonian Institution was subject to the FOIA, not a release of documents. *Id.* at 1120. The case at hand, however, resulted in the release of thousands of never-before released pages of documents. Despite this result the SEC disputes this as meeting the elements of this prong by saying the documents "do not pertain to any 'vital political choices' of which we are aware." Defendant's Opposition at 11. However, it is not a government agency's place to determine "vital political choices" of the public. Further, as these documents shed light on the workings

The Court's conclusion that the first factor is at best neutral (and, if anything, tips slightly in favor of the SEC) is further supported by the nature of the SEC's "limited role in the transaction" at issue. *Edelman III*, 302 F. Supp. 3d at 428. To be sure, understanding the workings of any regulatory agency serves the core purpose of FOIA. Here, however, Edelman does nothing to explain what was unique or of significant public interest about the SEC's actions. Nor does Edelman take issue with the Court's prior description of the limited role the SEC played. As the Court explained:

> [T]he ESRT "filed the Form S-4 registration statement that involved a consent solicitation to approve the consolidation of several properties, including [the Empire State Building], into [the] ESRT[,] which would then qualify as a real estate investment trust." . . . . The SEC then "review[ed] [the] ESRT's registration statement and related filings" in order to "comment on any potential disclosure deficiencies under the federal securities laws." . . . . The SEC "did not make any policy determinations on whether the ESRT transaction was fair to investors, nor [did the SEC] pass upon the merits, [its] fairness[,] or the accuracy of the disclosure."

*Id.* The Court does not doubt that a request for records relating to the SEC's review of a transaction might, at times, reveal records of significant public interest. But the Court cannot discern on the present record what that interest might have been in this case, and Edelman's "bare allegation that [his] request bears a nexus to a matter of public concern does not automatically mean that a public benefit [was] present." *Morley I*, 810 F.3d at 844.

---

> of the SEC itself as it relates to the Empire State Realty Trust ("ESRT") process and its actions in that process, the documents clearly meet the Cotton standard. The SEC's interactions with small investors and major real estate companies concern "vital political choices." Thus, there is clearly a public benefit from Edelman's FOIA litigation.

Dkt. 49 at 4–5. To the extent that Edelman means there is "public value" in "shed[ding] light on the workings of the SEC itself" and "[t]he SEC's interactions with small investors and major real estate companies," that is the sort of interest the D.C. Circuit rejected in *Fenster*, 617 F.2d at 744. And, if he means that there was some more substantial public interest at issue here, he fails to elucidate that contention.

11

2. *Commercial Benefit and Nature of the Plaintiff's Interest*

The second and third factors—the commercial benefit to the plaintiff and the nature of the plaintiff's interest in the records—also do little, if anything, to advance Edelman's claim to fees. These factors are "often combined . . . into a single factor assessing whether a plaintiff 'ha[d] sufficient private incentive to seek disclosure' of the documents without expecting to be compensated." *McKinley*, 739 F.3d at 711 (quoting *Davy*, 550 F.3d at 1160). In cases in which the claimant may obtain a "commercial benefit" or has some other "personal interest in pursuing litigation, 'an award of fees is generally inappropriate' because the claimant has sufficient motivation to bring suit without the promise of attorneys' fees." *Nat'l Sec. Counselors*, 2017 WL 5633091, at *13 (quoting *Fenster*, 617 F.2d at 743); *see also Cotton*, 63 F.3d at 1120 ("When a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate."). But not every possible pecuniary gain renders a FOIA request "commercial." As the D.C. Circuit has observed, "[s]urely every journalist or scholar may hope to earn a living plying his or her trade[,] . . . [y]et their activities often aim to ferret out and make public worthwhile, previously unknown government information—precisely the activity that FOIA's fees provision seeks to promote." *Davy*, 550 F.3d at 1160. The mission of a district court, instead, is to "distinguish[] between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Id.*

This case does not fit neatly into either category. Edelman acknowledges that, because he is "a possible future beneficiary of a trust that held . . . ownership" in Empire State Building Associates ("ESBA"), the prior owner of the Empire State Building, he has a "tangential commercial interest" in the records he sought and obtained. Dkt. 46-1 at 6. He asserts, however,

12

that he requested the records "primarily" to make the information available to the public, "including all investors in the Empire State Building." *Id.*

The SEC, in contrast, contends that Edelman's interest in the records "appears" to stem from "his family's longstanding ownership interest" in the ESBA and "his opposition to [the] tactics [that were] used to form [the] ESRT." Dkt. 48 at 12. The SEC cites a declaration Edelman offered in a separate FOIA case currently pending in the U.S. District Court for the Southern District of California:

> My grandparents purchased ten of the 3,300 units issued by [ESBA] in 1961, which they intended to keep in the family. My father . . . inherited five units . . . and placed them in the Edelman Family Trust . . . , so [they] would pass along to family members. My family has looked upon [its] ownership in ESBA as a family heirloom.

*Id.* (citing Dkt. 48-1 at 2 (Ex. 1) (Edelman Decl. ¶ 3)). In that same declaration, Edelman averred (1) that Malkin Holdings Inc. spearheaded the creation of the ESRT, which eventually took over ownership of the Empire State Building, Dkt. 48-1 at 2 (Ex. 1) (Edelman Decl. ¶ 4); (2) that Malkin Holdings put shareholders of ESBA to the choice of consenting to the consolidation or having their shares bought out and also strong-armed ESBA shareholders in other ways, *id.* at 2–4 (Edelman Decl. ¶¶ 6–9); and (3) that Malkin Holdings sued Edelman, his father, and two other family members in connection with the ESRT transaction, *id.* at 4 (Edelman Decl. ¶ 11).

The SEC also points to Edelman's website as evidence of his commercial and personal interest in the records he sought. *See* Dkt. 48 at 13. A banner at the top of the website asserts: "This is a website for fifty[-]year participant investors in Empire State Building Associates L.L.C." Dkt. 48-2 at 1. Among other things, the website including links to reports regarding lawsuits filed by ESBA investors against Malkin Holdings. *Id.*

13

at 1–5. In light of Edelman's "potential financial interest" and "strong personal interest" in "challenging Malkin Holdings' creation of [the] ESRT," the SEC argues that an award of attorneys' fees is not warranted. Dkt. 48 at 14.

The SEC has shown that Edelman has some financial interest in the records he sought. The relevant question, however, is whether that financial interest is enough to give Edelman an independent basis for seeking the information despite the potential costs of the FOIA litigation. The D.C. Circuit has held that a plaintiff's interest in bolstering a case in private litigation, *see Cotton*, 63 F.3d at 1120, or in obtaining information for subscribers to a service, *see Tax Analysts*, 965 F.2d at 1093, weighs against an award of fees. In those circumstances, an award of attorneys' fees was "not necessary to promote" the type of FOIA litigation at issue. *Id.* at 1095. Although this is a closer case, and, as a result, factors two and three do not weigh substantially against the award of attorneys' fees, the Court is unpersuaded that either factors tips measurably in Edelman's favor. At most, factors two and three are neutral.

3. *Reasonableness of the SEC's Opposition to Disclosure*

The final factor, however, cuts decidedly in favor of the SEC. This factor "evaluates why the agency initially withheld the records." *Morley v. CIA*, 894 F.3d 389, 392 (D.C. Cir. 2018) (*Morley II*). It requires the Court to evaluate whether the SEC "had a reasonable basis in law" for opposing disclosure and whether the SEC was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *McKinley*, 739 F.3d at 712 (internal citations omitted). In other words, the Court must consider the "merits of [the] agency's nondisclosure decision." *Brayton*, 641 F.3d at 528. The agency bears the burden of showing "that it had [a] colorable or reasonable basis for not disclosing the material" at issue. *Davy*, 550 F.3d at 1163; *see also Am. Immigration Council v. U.S. Dep't of Homeland Security*, 82 F. Supp. 3d 396, 407

(D.D.C. 2015); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 237 (D.D.C. 2012). In considering that showing, the Court must, once again, avoid conflating the eligibility and entitlement inquiries. For purposes of the entitlement prong of the inquiry, the question is no longer whether the plaintiff prevailed or whether the plaintiff's suit was a catalyst for the agency's release of records. Instead, the question is whether the agency's initial decision to withhold records and whether its position in the litigation were "reasonable," even if the Court ultimately ordered disclosure. *See Negley v. FBI*, 818 F. Supp. 2d 69, 76 (D.D.C. 2011).

Edelman argues that the SEC acted unreasonably by (1) failing to make its initial production prior to the filing of this lawsuit; (2) construing his consumer complaints request too narrowly; (3) withholding 113 pages of attorney notes on the grounds that attorney notes are categorically exempt from disclosure; and (4) redacting portions of Document 1 that were later unredacted. *See* Dkt. 46-1 at 7–8. The SEC responds that each of these actions was reasonable. The Court agrees.

*First*, although far from ideal, the Court is unpersuaded that the SEC's nine-month delay in responding to Edelman's six FOIA requests weighs materially in favor of awarding attorneys' fees. The SEC has explained that Edelman's six requests "sought multiple categories of documents and required the [SEC] to coordinate efforts by various . . . offices and divisions to conduct searches." Dkt. 48 at 2 (citing Dkt. 15-1 (Livornese Decl.); Dkt. 15-2 (Dennis Decl.)); Although Edelman is correct that the SEC "exceeded the statutory deadline," *Edelman I*, 172 F. Supp. 3d at 158, the D.C. Circuit has observed "that is true of a vast number of FOIA requests" and "the statute does not suggest that an award of attorneys' fees should be automatic in those situations." *Morley II*, 894 F.3d at 392 (emphasis omitted). The Court previously concluded that, although the SEC exceeded the statutory time period, there is "no evidence that it did so in

15

an extreme or egregious way" and that "there is nothing about the SEC's delay [suggesting] that it conducted its searches in anything other than good faith." *Edelman I*, 172 F. Supp. 3d at 158.

*Second*, the Court has already concluded that the SEC's position with respect to the consumer complaints request was "not far-fetched" and, indeed, was based on a "possible" reading of the request. *Id.* at 155.

*Third*, the SEC's decision to withhold attorney notes on a categorical basis was far from unreasonable. To the contrary, as the Court wrote in *Edelman I*, "it is an open question within this circuit whether notes taken by individual agency employees in the course of performing their official duties are 'agency records' subject to FOIA." *Id.* at 147.

*Finally*, with respect to the SEC's initial decision to redact portions of Document 1, the Court in *Edelman I* did not rule that the document had been improperly withheld. *Id.* at 159. Instead, the Court merely instructed the SEC to submit an unredacted version of the document to the Court for *in camera* review. *Id.* The SEC, on its own accord, "provide[d] Edelman with a version of that document" disclosing most of the information that it had previously withheld. *Edelman II*, 239 F. Supp. 3d at 50 n.3.

The Court, accordingly, finds that the SEC acted reasonably and was not "recalcitrant in its opposition to a valid claim." *Davy*, 550 F.3d at 1162; *Morley II*, 894 F.3d at 392 (quoting same).

\*   \*   \*

None of the four entitlement factors "is dispositive." *Davy*, 550 F.3d at 1159. Here, however, the fourth factor weighs against awarding fees, and the remaining three factors tip, if at all, modestly in the same direction. As a result, the Court finds that an award of fees is not "necessary to implement FOIA" and that the cost of litigating a case like this one would not

16

"dissuade" a FOIA applicant "who ha[s] been denied information from invoking [her] right to judicial review." *Id.* at 1158 (quoting *Nationwide Bldg. Maint., Inc.,* 559 F.2d at 715).

Accordingly, although "eligible," Edelman is not "entitled" to an award of fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

## CONCLUSION

For the reasons presented above, Edelman's motion for an award of attorneys' fees and costs, Dkt. 46, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: February 12, 2019